IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIGID RICHES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 23-cv-16676 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| LOYOLA UNIVERSITY MEDICAL ) | |
| CENTER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brigid Riches has brought this action for employment discrimination against her former employer, Defendant Loyola University Medical Center ("Loyola"). Specifically, Riches alleges that Loyola discriminated against her on the basis of her race, national origin, and disability, and retaliated against her for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (Counts I, III, and IV); 42 U.S.C. § 1981 (Count II); and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Count VI). Plaintiff further alleges willful violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* (Count V). Before the Court is Loyola's motion to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 16.) For the reasons stated below, the motion is denied.

## BACKGROUND

For the purposes of the motion to dismiss, the Court accepts all well-pleaded factual allegations in Riches's complaint as true and draws all reasonable inferences from those facts in her favor as the non-moving party. *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 862 (7th Cir. 2016). The complaint alleges as follows.

Riches is a Black/African-American person from Ghana who has a serious medical condition caused by fibroid tumors. (Compl. ¶¶ 8, 12, Dkt. No. 1.) Starting in May 2020, Riches was employed as a Pharmacy Technician by Loyola, which conducts itself as a hospital and pharmacy business. (*Id.* ¶¶ 7, 10.) During her employment, Riches informed various management-level employees of her national origin and medical condition. (*Id.* ¶ 9.)

While employed by Loyola, Riches was subjected to different terms and conditions of employment, which adversely altered her working conditions and environment compared to those experienced by her non-Black/African-American and non-Ghanian colleagues. (*Id.* ¶ 12, Count III ¶ 23.)[1] Such treatment included employees, managers, and directors screaming at Riches, "mak[ing] inappropriate comments about her immutable characteristics and belitt[ling] her." (*Id.* ¶ 12.) They would "openly humiliate her" in front of other employees, patients, and visitors. (*Id.*) Employees would throw her food in the garbage. (*Id.*) Management frequently threatened to fire her and disciplined her while not disciplining other similarly situated employees that performed similarly. (*Id.*) Management also allowed other employees to abuse attendance policies, which resulted in Riches having to perform their responsibilities as well as her own. (*Id.*) Also, management refused to provide Riches with necessary and promised training and "taunted" her when she continued to ask for assistance. (*Id.*) Beyond that, management refused to accommodate her medical issues or follow her physician's instructions for

---

[1] Count I of the complaint incorporates by reference the preceding paragraphs 1 through 11, and then continues with paragraphs numbered 12 through 22. Counts II through VI of the complaint each incorporates by reference paragraphs 1 through 22 (*i.e.*, the 11 paragraphs preceding Count I and the 11 additional paragraphs comprising Count I), and then continues with its next paragraph numbered 23. That is, each of Counts II through VI has its own paragraph 23. As a result, the complaint contains multiple paragraphs identified by the same number. For purposes of this memorandum opinion, the Court differentiates between paragraphs with the same number by reference to the particular count under which they fall.

accommodations. (*Id.*) Overall, management held her to a higher standard than her peers of other races, nationalities, and disabilities. (*Id.*) Riches claims that the discriminatory treatment and offensive misconduct was directed at her because she is Black/African American and from Ghana. (*Id.* ¶ 16; Count III ¶ 24.)

Riches complained to Loyola about the discriminatory treatment she experienced. (*Id.* ¶ 13.) Her complaints to management about race, national origin, and disability-based discrimination constituted protected activity under Title VII (Count IV ¶ 23.) Rather than address the conduct, Loyola failed to take remedial action and told Riches that she had engaged in misconduct, which she denied. (*Id.* ¶¶ 14, 20.)

Riches's medical condition substantially limits her major life activities. (Count VI ¶ 24.) Yet, notwithstanding her condition, she could perform the essential functions of her position with reasonable accommodations—namely, a shift adjustment, rest period, and/or minor modifications to her employment. (Count VI ¶ 25.) Riches advised Loyola of her medical condition and all relevant documentation. (Count V ¶ 26.) And so, Loyola was aware of Riches's disability and that she had recently experienced a flare-up. However, Loyola refused to engage in an interactive process to discuss her request for reasonable accommodation and denied it. (Count VI ¶ 27.)

During her employment, Riches formally requested medical leave, and Loyola granted her request. (Count V ¶¶ 27–28.) While she was on approved medical leave, however, Loyola terminated Riches's employment on July 8, 2021, using prior policy violations as a pretext. (Count VI ¶ 27.) In fact, she was terminated because she had engaged in protected activity and due to her request for leave and the accommodation provided. (Count IV ¶ 24; Count V ¶ 29.)

3

Loyola's actions were willful, knowing, and with reckless indifference and disregard of Riches's rights. (Count IV ¶ 27; Count V ¶ 30; Count VI ¶ 31.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### I. Timeliness of Riches's Claims

In moving for dismissal, Loyola argues that Riches's Title VII, ADA, and FMLA claims are untimely. And for any timely claims under Title VII, § 1981, and the ADA, Loyola argues that those claims still fail because Riches's allegations are insufficient to state a claim. The Court turns first to the issue of timeliness and then considers the sufficiency of the plaintiff's claims.

#### A. Timeliness of Title VII and ADA Claims

First, Loyola argues that Riches's Title VII and ADA claims must be dismissed because the alleged adverse actions fall outside the limitations period. The statute of limitations is an affirmative defense, one that Riches's complaint "need not anticipate or overcome." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). Dismissal based on an affirmative defense is only appropriate "when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense." *Id.* at 691 n.1.

4

In the state of Illinois, a plaintiff who wishes to bring a Title VII claim or an ADA claim must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the occurrence of the alleged unlawful employment practice. *See* 42 U.S.C. §§ 12117(a), 2000e-5(e)(1); *Teague v. Nw. Mem'l Hosp.*, 492 F. App'x 680, 684 (7th Cir. 2012) ("A plaintiff in Illinois, a 'deferral state' because it has a state agency with enforcement powers parallel to those of the EEOC, must file a charge of discrimination with the EEOC within 300 days of some offending conduct."); *see also Stuart v. Local 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1017 (7th Cir. 2014). For purposes of the statute of limitations, the clock begins to run for an unlawful employment practice on the date of a discrete act of discrimination. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–11 (2002). If it does not fall within the 300-day timeframe, the discrete act is untimely and, therefore, cannot form the basis of a Title VII claim or an ADA claim. *See id.* at 113–14.

Riches filed her charge with the EEOC on April 29, 2022. (Compl. ¶ 2.) And so her charge covered Loyola's conduct in the preceding 300 days—*i.e.*, on or after July 3, 2021. Because Riches was terminated on July 8, 2021, she presumably did not face a discrete discriminatory act after that date. Therefore, based on the 300-day window, she must have faced a discrete discriminatory act at some point between July 3, 2021 and July 8, 2021.

Loyola argues that Riches's claims are time-barred because she was on leave during this five-day timeframe. According to Loyola, she could not have experienced any harassment or discrimination during those five days while she was away from work, and any accommodation requests or denials of such requests likewise must have preceded those five days. But, if nothing else, Riches's termination while she was on leave constituted a discrete act—one that occurred within the 300-day window. *See Nat'l R.R. Passenger*, 536 U.S. at 114 ("Discrete acts such as

5

termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."). Given the timeliness of that discrete act, Riches's claims are not time-barred. Furthermore, the Court observes that "even untimely 'prior acts' still can be considered as 'background evidence in support of a timely claim.'" *Ross v. UChicago Argonne, LLC*, No. 18 CV 4200, 2023 WL 2745678, at *11 (N.D. Ill. Mar. 31, 2023) (quoting *Nat'l R.R. Passenger*, 536 U.S. at 113). Although alleged discriminatory acts preceding July 3, 2021 cannot for the basis for Riches's discrimination claims under Title VII and the ADA, she may refer to such prior acts as evidence in support of her timely claims.

For these reasons, Loyola's motion to dismiss Riches's Title VII and ADA claims as untimely is denied.

B.     **Timeliness of FMLA Claims**

Loyola further maintains that Riches's FMLA claim is also untimely. Generally, a plaintiff must file an FMLA action within two years after the cause of action accrued. 29 U.S.C. § 2617(c)(1); *see also Carol B. v. Waubonsee Cmty. College*, No. 23 CV 02033, 2024 WL 3069974, at *4 (N.D. Ill. June 20, 2024). However, the statute of limitations is extended to three years for a cause of action arising out of a "willful violation." 29 U.S.C. § 2617(c)(2); *see also Carol B.*, 2024 WL 3069974, at *4. The statute does not define the term "willful." *See Sampra v. U.S. Dep't of Tranp.*, 888 F.3d 330, 333 (7th Cir. 2018).

Because Riches filed this action in December 2023, more than two years after her termination in July 2021, Riches's FMLA claim is untimely if the two-year statute of limitations applies. On the other hand, the claim is timely under the three-year statute of limitations for willful violations. Loyola argues that Riches has not sufficiently pleaded a willful violation for the three-year statute of limitations to apply.

6

But since the statute of limitations is an affirmative defense, Riches is "not required to plead allegations to overcome the issue." *Carol B.*, 2024 WL 3069974, at *4. Moreover, "the question of whether an [FMLA] violation was willful—and thus whether the applicable statute of limitations is two or three years—is a determination normally reserved for the trier of fact." *Id.* at *4. A determination of willfulness is generally inappropriate at the motion-to-dismiss stage, as the matter will usually turn on questions of fact that require an evidentiary record. *See Sampra*, 888 F.3d at 333 (explaining that the three-year statute of limitations did not apply at the summary-judgment stage because the plaintiff "ha[d] not offered evidence sufficient to support a finding that [her employer] violated her FMLA rights"). At the pleading stage, Riches's allegations of willfulness under the FMLA sufficiently support the application of the three-year statute of limitations. The question of willfulness can be addressed following discovery, either at the summary judgment stage or before the ultimate trier of fact.

## II. Sufficiency of Riches's Claims

With respect to any timely claims, Loyola argues that Riches has failed to adequately allege discrimination under Title VII and § 1981, retaliation under Title VII, and discrimination under the ADA. The Court addresses each claim below.

### A. Discrimination Claims Under Title VII and § 1981

Riches alleges race and national origin discrimination by Loyola in violation of Title VII, as well as race discrimination in violation of § 1981.

To state an employment discrimination claim under Title VII, a plaintiff must set out sufficient factual allegations to show: "(1) she is a member of a protected class, (2) she was subjected to an adverse employment act, and (3) there is a link between those two." *Daniel v. Advocate Health Care Network*, 278 F. Supp. 3d 1056, 1062 (N.D. Ill. 2017) (citing *Martino v.*

7

*W. & S. Fin. Grp.*, 715 F.3d 195, 201–02 (7th Cir. 2013)). "A materially adverse employment action is something more disruptive than a mere inconvenience or an alteration of job responsibilities." *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (internal quotations marks omitted). For purposes of Title VII, the Seventh Circuit has identified "three general categories of actionable, materially adverse employment actions":

> (1) Cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*Id.* at 780.

Here, Riches has sufficiently pleaded discrimination on the basis of her race and national origin. As the complaint alleges, Riches is Black/African American and Ghanian, thereby belonging to a protected class pursuant to her race and national origin. The complaint further alleges that Riches was subjected to numerous adverse employment acts, including but not limited to various forms of humiliating treatment and ultimately termination by Loyola. Connecting these allegations, Riches claims that Loyola treated her adversely because of her race and national origin, and that her non-Black/African-American and non-Ghanian colleagues were not subjected to such treatment by Loyola.

Loyola faults Riches for failing to identify a specific similarly situated employee who received more favorable treatment than she received. But a plaintiff claiming discrimination "is not required to identify similarly situated comparators at the pleading stage." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014); *see also Geinosky v. City of Chicago*, 675 F.3d

743, 748 n.3 ("Even in a case where a plaintiff would need to identify a similarly situated person to prove his case, . . . we see no basis for requiring the plaintiff to identify the person *in the complaint*."). That the complaint does not include the specific identities of the colleagues who received better treatment than Riches does not render her allegations insufficient. Rather, Riches has properly pleaded facts pointing to a link between her protected characteristics and the alleged adverse employment actions. Moreover, the Seventh Circuit has reaffirmed the "minimal pleading standard" for claims of race discrimination. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). This Court finds that Riches's allegations meet that standard.

Similar to Title VII, § 1981 enables a plaintiff to bring a claim for race discrimination in the employment context. Indeed, "[t]he legal analysis for discrimination claims under Title VII and § 1981 is identical." *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015). Because Riches's Title VII claims survive the motion dismiss, her § 1981 claim does as well.

### B. Retaliation Claim Under Title VII

Riches also alleges that her complaints to management about the discrimination she faced in the workplace constituted protected activity, and that Loyola terminated her in retaliation for making those complaints. Loyola, however, maintains that Riches has not adequately alleged that she engaged in protected activity to support a retaliation claim.

Title VII prohibits an employer "from discriminating against an employee who has 'opposed any practice' made unlawful by Title VII." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (quoting 42 U.S.C. § 2000e–3(a)). By opposing an unlawful employment practice, an employee has engaged in statutorily protected activity. *See Alley v. Penguin Random House*, 62 F.4th 358, 362 (7th Cir. 2023). Thus, reporting allegations of discrimination based on a protected characteristic constitutes protected activity. *See id.* To state a claim for retaliation

9

under Title VII, Riches "must somehow tie the adverse action to her protected activity." *Clark v. SMG Corp.*, No. 16-cv-07985, 2018 WL 4699763, at *4 (N.D. Ill. Sept. 30, 2018). That means she "must provide some specific description of that conduct beyond the mere fact that it is protected." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007). She has done so.

First, Riches alleges that she faced various forms of discrimination in the workplace due to her race and national origin. She then alleges that she complained to Loyola about these acts of discrimination, while correctly maintaining that her complaints constituted protected activity. Finally, Riches alleges that she was terminated for engaging in such protected activity, thereby tying Loyola's alleged adverse act to her protected activity. Contrary to Loyola's assertions, Riches's allegations are not overly broad or conclusory. Rather, she points to specific acts of discrimination about which she complained to Loyola and then identifies her termination as the alleged adverse act she suffered in retaliation for her complaints. In short, Riches's retaliation claim is adequately pleaded and survives Loyola's motion to dismiss.

### C. Disability Claim Under the ADA

Beyond discrimination based on her race and national origin, Riches alleges discrimination based on her disability in violation of the ADA. To state a claim for discrimination under the ADA, a plaintiff must allege that (1) she is disabled within the meaning of the statute, (2) she is "otherwise qualified to perform the essential functions of the job with or without reasonable accommodation," and (3) her employer "took an adverse job action against her because of her disability or failed to make a reasonable accommodation." *Jezior v. City of Chicago*, No. 22 C 6907, 2025 WL 744030, at *3 (N.D. Ill. Mar. 7, 2025) (quoting *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000)). Under the ADA, a "disability" is defined as

"a physical or mental impairment that substantially limits one or more major life activities," having "a record of such an impairment," or "behind regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include, but are not limited to, working. *Id.* § 12102(2).

Here, Riches's allegations meet the pleading requirements for an ADA claim. She alleges that she has a serious medical condition caused by fibroid tumors, which substantially limits her major life activities. She further alleges that she has a record of a disability and that Loyola was aware of her disability. Moreover, Riches claims that she can perform her work functions with certain reasonable accommodations, which she specifically identifies. Lastly, Riches alleges that Loyola failed to accommodate her disability and terminated her employment based on her disability. These allegations are sufficient to withstand a Rule 12(b)(6) motion for dismissal.

## CONCLUSION

For the foregoing reasons, Loyola's motion to dismiss (Dkt. No. 16) is denied.

ENTERED:

Dated: September 27, 2025

_____
Andrea R. Wood
United States District Judge